269 P.2d 729

**GENERAL PETROLEUM CORP.**

**v.**

**BARKER et ux.**

**GENERAL PETROLEUM CORP.**

**v.**

**REED et al.**

**No. 5726.**

Supreme Court of Arizona.

April 19, 1954.

Rehearing Denied May 11, 1954.

Moore & Romley, Phoenix, for appellant, General Petroleum Corp.

Joseph H. Morgan and Donald J. Morgan, Phoenix, for appellees Barker.

Carl W. Divelbiss, Phoenix, Attorney for appellees Reed and Employers' Fire Ins. Co.

UDALL, Justice.

This is an appeal by defendant General Petroleum Corporation from orders of the Superior Court of Yavapai County in two consolidated cases, vacating unanimous verdicts in defendant's favor, setting aside the resulting judgments, and granting new trials therein. The primary question involved, as set forth in its sole assignment of error, is whether the trial court abused its discretion in making such orders.

In an earlier appeal we decided certain phases of this litigation and remanded the case for a new trial. See Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390; supplemental opinion on rehearing, 72 Ariz. 238, 233 P.2d 449. The facts therein stated give the overall picture and the basis for the suits.

The two damage actions grew out of a fire occurring June 3, 1948, at Camp Verde, Arizona, which destroyed a service station and grocery store building owned by the Barkers, who had leased the grocery store portion thereof to the Reeds. Upon retrial the actions were consolidated by stipulation, and are here consolidated on appeal.

The Barker suit (No. 17399) sought damages in the sum of $17,000, plus loss of certain rents and profits. J. J. Reed, et ux., lessees of the grocery store, and their insurer, Employers' Fire Insurance Company, brought suit (No. 17771) for damages in the sum of $4,114.60, for destruction of a stock of merchandise and certain personal effects, and loss of profits.

In each case it was alleged that the fire causing the destruction was caused by the negligence of an agent or servant of defendant General Petroleum Corporation (one Robert Bland) while making a delivery of stove gas into a barrel located in a storage room of the service station. The answer in each case was in effect a general denial.

The Barker complaint named as defendants the General Petroleum Corporation and W. F. Simpson, the latter being the wholesaler in the area for the corporation's products, and who we declared in the previous appeal was legally an agent of the corporation. The Reed suit named these same defendants as well as the Barkers. During trial a motion for instructed verdict as to Simpson was granted and judgment entered thereon. In the Reed case the court granted a motion to dismiss as to Barkers. No appeal has been taken from these rulings, therefore, except for certain third-party proceedings by General Petroleum Corporation against Simpson, which by stipulation are reserved for later consideration, the battle wages between the respective plaintiffs and the defendant corporation. We shall hereafter refer to them as plaintiffs and defendant.

The trial court did not specify the particular ground or grounds upon which the motions for new trial were granted, and we are therefore compelled to review all the grounds set forth in plaintiffs' motions to see if any one of them justified the action of the trial court. Insofar as the motions are predicated upon errors of law occurring at the trial, we apply this yardstick: are these errors so prejudicial that if the case were here on appeal from a judgment in favor of defendant, we would be required to reverse the case? See, Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 63 P.2d 193; cf. City of Phoenix v. Harlan, 75 Ariz. 290, 255 P.2d 609.

## 1. Fire Insurance

The first ground in this category is that the court erred in admitting evidence that plaintiffs Barker carried fire insurance. This fact was first brought out by Barker who stated that a Mr. Bolt, a "fire insurance adjuster", had helped him prepare a certain exhibit. No objection was made by counsel, and no motion was made to strike it or to admonish the jury to disregard it. Later, on cross-examination it was referred to again. Plaintiffs claim that even though the matter of fire insurance was inadmissible, inasmuch as it had come to the jury's attention Barkers were entitled to go into the subject and show the amount collected. There is no merit to this contention, because at the request of Barkers the trial court in its instructions specifically told the jury "* * * that any payment made to plaintiffs on account of insurance on the property destroyed may not be used to minimize the amount of damages sustained by them. So if you find the issues in favor of plaintiffs, you will award them damages for their loss, without any deduction for any sum they may have received on account of insurance." Giving this beneficial instruction sufficiently protected their rights with regard to insurance coverage.

## 2. Limiting Scope of Recross-examination of Bland

Robert Bland was called as a defense witness, and after giving testimony on direct examination he was cross-examined at length by counsel for both plaintiffs. On redirect examination Bland was asked only about the color of the socks he wore on the day of the fire and whether he was smoking during the time he was filling the drum with stove gas. Counsel for plaintiffs Barker then undertook on recross-examination of Bland to delve into the contents of a written statement, identified by the witness as having been made by him after the fire and prior to trial. The statement was not offered in evidence and there is no showing the court was even informed of its contents. Counsel apparently wanted to show that statements appearing therein were contradictory to some testimony given on direct examination or cross-examination, and thus impeach the witness. The objection was made and sustained by the court that this was improper recross-examination. This

ruling was assigned as one of the grounds for granting motion for new trial.

The question presented is whether the court, in the circumstances above set forth, abused its discretion in thus limiting the scope of recross-examination to the matters brought out on redirect examination. We are convinced that it did not. Unquestionably, under Rule 43(b) Rules Civil Procedure, Section 21–922, A.C.A. 1939, the scope of cross-examination proper is limited only by materiality, for "Any witness may be cross-examined on *any matter material to the case. * * ***" (Emphasis supplied.) See Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758, for an excellent exposition of the rule. However, Rule 43(b) does not mean the trial court, in its discretion, may not limit the scope of the inquiry on recross-examination. The rule in this respect is well stated in 70 C.J. Witnesses, § 868, as follows:

"Ordinarily a party must exhaust his cross-examination of a witness when it is entered into, and recross-examination is properly refused where redirect examination has been confined to the scope of the cross-examination and has brought out no new matter, particularly where the matter sought to be inquired into is not disputed. Recross-examination, generally, is not allowable as of right, but the whole matter of permitting recross-examination, and further questioning and particular questions thereon, is in the sound discretion of the trial court, whose action will not be disturbed unless an abuse of discretion is shown."

3. Denying right to cross-examine Simpson by leading questions

W. F. Simpson was called and testified as a witness for the plaintiffs. At this time he was a party defendant in both suits, but the court later directed a verdict in his favor. There is still pending a third-party claim by General Petroleum against Simpson for contribution in the event the judgment goes for plaintiffs. Upon redirect examination of Simpson, counsel for plaintiffs Barker undertook to declare the witness to be hostile and demanded the right to cross-examine him by leading questions. The court refused to permit it, and this ruling was assigned as a basis for new trial. Careful examination of the record convinces us the trial court was correct in ruling that the witness manifested no hostility. Under the test laid down by us in the recent case of J. & B. Motors, Inc., v. Margolis, 75 Ariz. 392, 257 P.2d 588, as to when leading questions may be asked of one's own witness, we hold the trial court did not abuse its discretion in refusing to permit the neutral witness Simpson to be asked leading questions.

4. Bias and Prejudice of Jury

This was one of the grounds urged for new trial, but upon appeal no mention is made of it, doubtless because this assignment finds no support in the record.

242

### 5. The Instructions

The motion for new trial alleges error of law occurred in the failure to give certain portions of plaintiffs' requested instruction No. 5, failure to give plaintiffs' requested instruction No. 15, and the giving of defendant's instruction No. 5. Plaintiffs' No. 5 would have been a comment on the evidence, for it assumed a fact in issue, namely, that the fire was touched off by a static or electric spark as plaintiffs contended, and made no mention of defendant's contention that it was touched off by the pilot light in the hot water heater. We believe it would have been reversible error to give this instruction. Plaintiffs' instruction No. 15 was an instruction relative to the failure of defendant to furnish reasonably safe and adequate appliances for delivery to plaintiffs of stove gas, which is an explosive and inflammable product. There was no evidence offered by plaintiffs that the appliances furnished were not safe or adequate, and the record before us certainly would not permit an inference of defendant's negligence in this regard. Defendant's No. 5 was an instruction on contributory negligence, wherein the jury was told that if this defense were established to their satisfaction it would be a bar to plaintiffs' recovery. The instruction is legally correct as was the instruction submitted by plaintiffs Barker and given by the court, that contributory negligence was a defense to be established by defendant by a preponderance of the evidence, unless such negligence was shown by or could be inferred from, the evidence adduced by plaintiffs. We find contributory negligence was very much an issue in the case even though not raised by the pleadings. Rule 15(b), Rules Civil Procedure, Section 21–449, A.C.A. 1939, declares:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * "

Furthermore, in the record brought before this court there is no showing of compliance with Rule 51, Rules Civil Procedure, Section 21–1019, A.C.A.1939:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

If this case were before us on appeal from a judgment for defendant, it is settled law that plaintiffs could not successfully assign error to the instructions because the record shows no objection to the giving or failure to give the instructions now complained of. Kauffroath v. Wilbur, 66 Ariz. 152, 185 P. 2d 522, 524; Sibley v. Jeffreys, 76 Ariz. 340, 264 P.2d 831. We think in reason no different rule obtains in the lower court, and that litigants may not urge as errors of law and grounds for new trial, Section 21-1301 (6), A.C.A.1939, the giving or failure to give instructions to which no specific objections were made. A contrary rule would make for uncertainty and confusion, erode away the value of verdicts fairly won, and place a premium on ambush tactics at trial.

The trial court's orders granting motions for new trial if based upon any of the legal questions numbered 1 to 5 heretofore considered, cannot be sustained. Rothman v. Rumbeck, 54 Ariz. 443, 454, 96 P.2d 755.

### Weighing the Evidence

The final ground urged for new trial was that "The verdict is not supported by sufficient evidence, *and is contrary to the evidence.*" (Italics ours). This last term means " 'against the weight of the evidence' ". 66 C.J.S., New Trial, § 70 a.

Defendant contends that once a case has been submitted to a jury, and it has, upon conflicting evidence, resolved the issues of fact, the trial court may not thereafter reweigh the evidence, and grant a new trial on the basis that some other verdict would have been more reasonable or more just. Thus it is argued, the trial court could not *weigh* the evidence when considering the motion for new trial, but would be limited to reviewing the record to determine if there is sufficient legal evidence therein to support the verdict rendered. Our decisions are not in harmony on this question. Defendant relies upon three Arizona cases wherein this court has admittedly used language that supports its position: Consolidated National Bank of Tucson v. Cunningham, 28 Ariz. 518, 238 P. 332; Apache Ry. Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 159 A.L.R. 857; and Atchison, T. & S. F. R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167. We note that these three cases differ from the case at bar in that the appeals were taken after a motion for new trial was denied.

On the other hand, plaintiffs rely upon cases wherein this court has declared that upon motion for new trial the trial court may properly weigh the evidence: Huntsman v. First Nat. Bank, 29 Ariz. 574, 243 P. 598; Franco v. Vakares, 35 Ariz. 309, 277 P. 812; Brownell v. Freedman, 39 Ariz. 385, 6 P.2d 1115; Southern Arizona Freight Lines Ltd. v. Jackson, 48 Ariz. 509, 63 P.2d 193; Sadler v. Arizona Flour Mills Co., 58 Ariz. 486, 121 P.2d 412; Filer v. Maricopa County, 68 Ariz. 11, 198 P.2d 131; Zevon v. Tennebaum, 73 Ariz. 281, 240 P.2d 548; and Roman Catholic Church, Diocese of Tucson v. Keenan, 74 Ariz. 20, 243 P.2d 455.

■ Inasmuch as the motions for new trial were denied in the Shumway and Hicks cases, supra, we are inclined to the view that the statements therein to the effect that the trial judge is without power to reweigh the evidence and set aside the verdict, are dicta. In any event however, we believe all the force of these cases, so heavily relied upon by defendant, is dissipated by an examination of Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, upon which this court relied for its pronouncement that upon motion for new trial, the trial court may not reweigh the evidence. In the Tennant case, when the court declared that conflicts in the evidence presented a case for the jury which could not be re-examined by the court, it was speaking of motions for directed verdicts and motions for judgment non obstante verdicto, and was not speaking of motions for new trial. It thus appears that in the Shumway and Hicks cases, supra, we took the statements of the Supreme Court of the United States out of context when we applied them to the motion for new trial. The error of such action is fully discussed by Judge Parker in the scholarly opinion in Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350. Therein he shows the rule to be that motions for directed verdict and motions for judgment n. o. v. are always granted or denied as matters of law, whereas motions for new trial may be addressed to the discretion of the court, and may be granted even though the conflicting evidence in the record compelled submission of the case to the jury, and would have made a directed verdict or judgment n. o. v. improper.

■ We have examined the cases above cited, together with Sharpensteen v. Sanguinetti, 33 Ariz. 110, 262 P. 609, and the case upon which the court there relied, Sovereign Camp Woodmen of the World v. Thiebaud, 65 Kan. 332, 69 P. 348; and Dennis v. Stukey, 37 Ariz. 299, 294 P. 276, rehearing denied 37 Ariz. 510, 295 P. 971; and have come to this conclusion: A motion for new trial upon the ground the verdict is against the weight of the evidence, is addressed to the sound discretion of the trial court, and in ruling thereon the trial court may weigh the evidence. Upon appeal, the order granting a new trial will be upset where it is affirmatively shown the order is unreasonable and a manifest abuse of discretion under the state of the record and the circumstances of the case. Insofar as Consolidated National Bank of Tucson v. Cunningham, Apache Ry. Co. v. Shumway, and Atchison, T. & S. F. R. Co. v. Hicks, supra, conflict herewith, they are disapproved. Some point is made that because our constitution provides the issue of contributory negligence shall be one for the jury, Const. of Arizona, Art. 18, § 5, then where this issue has been passed upon by a jury, the verdict may not be upset and a new trial granted. However, Franco v. Vakares, supra, and Dennis v. Stukey, supra, are sound authority to the contrary,

that this constitutional provision is no limitation upon the power of the trial court to grant a new trial. The spirit and purpose of the provision are sufficiently met by according a jury upon the new trial.

### Reeds' Appeal

In the light of the rule we have stated, the order as to plaintiffs Reed is easily upheld. They were lessees of that portion of the building devoted to general store purposes, and their only relationship to or connection with the circumstances and events which preceded the burning was that their plumbing for hot water was connected with the water heater in the storeroom where Bland was filling the stove gas barrel. One of the issues formulated upon trial of the cases was whether the pilot light on this water heater was the proximate cause, or a contributing cause, of the fire. However, it is difficult to see how the lessees can be charged with responsibility for this heater, and consequently we believe a verdict that Reeds recover nothing is one that was properly set aside and a new trial granted in the reasonable exercise of judicial discretion.

### Barkers' Appeal

In the case at bar the jury in rendering its verdict for defendant necessarily found under these peculiar circumstances that there were two contributing acts of negligence, i. e., the spilling of the stove gas on defendant's part, and maintaining a pilot light in close proximity to the gas barrels on plaintiffs' part, and that these acts were the proximate cause of the damage. To find for the plaintiffs under the circumstances of this case it would be necessary for the jury to find no contributory negligence on the part of plaintiffs, and to conclude that Bland, the agent of defendant, not only negligently spilled the gas but thereafter it was set afire without an independent intervening cause, and without a contributing cause chargeable to plaintiffs' negligence. Only by this finding could the jury conclude that Bland alone was negligent, and that his negligence was the sole and proximate cause of the fire.

An examination of the evidence on this matter convinces us the court's action granting the motion for new trial cannot be sustained. Barker testified that the driver had spilled gas on the floor before in filling the drum, that he warned him previously to be careful or "he was going to burn him down"; that on that warm June day (temperature 100 degrees) the doors and windows of the garage storeroom were wide open; this room was 18 feet by 16 feet, with an 8-foot ceiling; the pilot light was fifteen inches off the floor and 18 feet distant from the gas drum in question; that through Bland's negligence in filling the barrel "the gas run out all over everything * * * all over the floor in the northwest corner * * * it covered an area of about five or six feet right around these barrels, so there undoubtedly must have been two or three gallon that run over"; that he told Bland

246

"to get some of them rags to mop that oil up, and I turned around and saw it flash up * * *"; that there were no wool or nylon rags on the floor of the storeroom; that in his judgment it would have been impossible for the pilot light to have ignited the fumes from the spilled gas; "It (stove gas) is very violent if it is not handled properly and you have got to keep it confined. On a concrete floor where it is spilled it will spread very rapidly and the fumes will get out."; That the danger was greater in warm weather than in cold for it was then more volatile; that a fire may start from (a) a static spark caused by the rubbing reaction or friction, (b) a flame, (c) a heel of a shoe or other metal object striking another hard object thereby causing a spark.

Defense witness Bland testified that when he discovered the gas in the funnel would overflow the barrel, he tilted the spout and poured the remaining gas back into the five-gallon can on the floor; that he wiped off the barrel—but not the floor—with a rag, and was intending to draw some of the fluid from the barrel, and that as he turned around to get the can the whole wall back of the barrels was on fire; that no stove gas had been spilled on the walls, and only a small amount on the floor; that he was wearing rubber-soled and rubber-heeled field boots on the day in question; that while he used cigarettes and had some on his person he was not smoking during these operations; that he did not drop any hard object on the concrete floor; that he had "no idea as to what caused the fire".

Plaintiffs' son, Bob Barker, recently discharged from the Marine Corps, qualified as a demolition expert and testified to the inflammability and explosiveness of stove gas. He gave the opinion that under all the facts adduced at trial, the pilot light could not have caused the fire as it was so far distant the fumes would be dissipated. His theory was "there was one hard object struck against another and produced a spark". He admitted he was not there at the time of the fire and did not know of any hard object striking another and causing a spark. In fact there was no testimony to support his theory.

With this evidence before it, the jury denied Barkers any relief, doubtless because the jury recognized the clear preponderance of the evidence shows Barkers were contributorily negligent in maintaining the water heater with a burning pilot light, and this negligence was a contributing cause of the fire. The purpose of allowing the trial court to weigh the evidence upon motion for new trial, is that it shall exercise a sound judicial discretion and promote justice by preventing unjust verdicts. Sharpensteen v. Sanguinetti, supra, 33 Ariz. 110, 262 P. 609; Dennis v. Stukey, supra, 37 Ariz. 299, 294 P. 276; Kent v. Lindsey, 30 Ala.App. 582, 10 So.2d 54; Nevada Rock & Sand Co. v. Grich, 59 Nev. 345, 93 P.2d 513. It is our considered opinion that in the instant case where no errors of law oc-

·curred at trial, where the jury was not biased or prejudiced, but exercised an honest and impartial judgment, and the clear preponderance of the evidence shows the verdict is correct and justice has been meted out, it was an abuse of discretion to set aside the verdict and grant a new trial.

The order granting a new trial to Reeds is affirmed; as to the Barkers the order granting a new trial is vacated with direction to reinstate the judgment.

Affirmed in part, reversed in part.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.